**SO ORDERED.**

**SIGNED this 21 day of June, 2024.**



_____
**Joseph N. Callaway
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

IN RE:

GEORGE E. LYLE JR.
SABRINA CHAMBERS LYLE

    DEBTORS

CASE NO. 22-00505-5-JNC
CHAPTER 13

### ORDER ON MOTION FOR SANCTIONS

The matter before the court is the Motion for Sanctions for Violation of the Automatic Stay (Dkt. 39; the "Motion") filed March 21, 2024, by George Lyle and Sabrina Lyle (together, the "Debtors"), who are married and filed a joint petition in this chapter 13 case. The Motion seeks the imposition of sanctions against creditor Corey Heating, Air Conditioning, & Plumbing Inc. ("Corey Inc.") for alleged violations of the automatic stay under 11 U.S.C. § 362. The record reflects that the Motion was served on Corey Inc. at its last known mailing address, but no response thereto was made. A Notice of Hearing was issued on April 9, 2024, affording Corey Inc. a further opportunity to appear before the court and be heard on any defenses it may have. The hearing was held on May 1, 2024, in Greenville, North Carolina. Attorney Erik A. Martin appeared for the Debtors. No appearance was made by an attorney or anyone else on behalf of Corey Inc.

## JURISDICTION

The court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 151 and 1334. Further, it is authorized to hear this matter under the General Order of Reference entered August 3, 1984, by the United States District Court for the Eastern District of North Carolina. In addition, this discrete matter, being a motion filed within the bankruptcy case pursuant to the contested motion procedures of Federal Rule of Bankruptcy Procedure 9014 and pertaining to the automatic stay provisions of 11 U.S.C. § 362, is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G), which this bankruptcy court may fully hear and determine.

## FINDINGS OF FACT

The Debtors filed a joint petition for relief under chapter 13 of the Bankruptcy Code on March 9, 2022. Corey Inc. is listed as an unsecured creditor in the case schedules (Dkt. 1 at 38) in Schedule E/F, section 4.16. The address of the creditor is listed as "406 Washington St. A, Williamston, NC 27892" (the "Washington Street address"). The case mailing matrix at page 71 of 74 of the schedules also lists the same mailing address. That same day the court issued the Notice of Chapter 13 Case and Meeting of Creditors (Dkt. 9; "Meeting of Creditors Notice"); it was served on all interested parties, including Corey Inc. (Dkt. 12; BNC Certificate of Mailing). The next day, March 10, 2022, a notice of the Debtors' chapter 13 plan was mailed by the Debtors' counsel to all creditors, including Corey Inc. (Dkt. 10).

Significantly, the Meeting of Creditors Notice contains the following language in the body of its first section:

> The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors, the debtors' property, and certain codebtors. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required

>    to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay.

Meeting of Creditors Notice, Dkt. 9 at 1.

In both instances, the mailing address used for Corey Inc. is reflected in the certificates of service as the Washington Street address. No indication of returned, undelivered mail appears in the case docket. The proposed chapter 13 plan was confirmed by an order entered November 17, 2022 (Dkt. 16; "Order Confirming Plan").  The Order Confirming Plan was served (Dkt. 17) by the chapter 13 trustee on all parties, again including Corey Inc. During this time, Corey Inc. did not appear at any hearing, respond to any motion or notice, file a proof of claim, or file a motion to modify or lift the automatic stay. In short, it has not participated in this chapter 13 case in any manner that can be discerned from the record.  What Corey Inc. did do during the postpetition timeframe was continue to send monthly payment invoices to the Debtors' home address in contravention of the bankruptcy case notices.

At the hearing, Sean Orcutt, an attorney for the Debtors, testified. He indicated that in response to the invoices, three letters were sent by his law firm via first class mail to Corey Inc. during the pendency of the bankruptcy case—specifically on May 3, 2022; July 14, 2022; and February 15, 2023. He testified that the letters, which were admitted as Exhibit 1, (i) notified Corey Inc. of the pending bankruptcy case, (ii) reiterated instructions in the Meeting of Creditors Notice on filing a proof of claim, (iii) explained the application of the automatic stay imposed in a bankruptcy case, and (iv) warned that continued attempts to collect a debt would violate that automatic stay.  None of the letters provide reference or any specifics to the invoices being mailed by Corey Inc.; they are apparently form letters used by the firm and signed by a paralegal. The letters spoke in general terms regarding the automatic stay rather than demanding Corey Inc. cease

3

and desist from sending identified monthly invoices. They were not even sent to the same address; the May 3 letter was addressed to the Washington Street address, while the other two letters were sent to P.O. Box 787 Williamston, NC 27892.

Mrs. Lyle next testified at the hearing. She stated that Corey Inc. mailed invoices to the Debtors' residence each month during the pendency of their joint bankruptcy case, asserting that twenty such invoices had been received. Only ten such invoice statements were introduced into evidence, collectively as Exhibit 2. All are addressed to Mr. Lyle, not Mrs. Lyle, and not to them jointly. Her name does not appear on any of the invoices placed into evidence. The statements reference a principal charge of $278.40 for air conditioner repairs performed prepetition in August 2016. The first two invoices (April and May 2022) reflect $542.68 as they contained finance charges; the remaining eight invoices (for various months) show the $278.40 principal charge only.

Mrs. Lyle further testified that the receipt of these statements caused her great anxiety and that she felt betrayed by Corey Inc. She said it was a difficult decision to file bankruptcy, but the purpose was to stop collection efforts. She discussed how her anxiety increased each time a statement arrived. However, when asked about Mr. Lyle's reaction, she indicated he was not upset or bothered by receiving the statements.[1] She testified in detail regarding her medical issues that existed prior to the filing of this case, generally acknowledging that these conditions existed before receiving the invoices while maintaining that the conditions worsened afterwards.

## THE AUTOMATIC STAY

Pursuant to 11 U.S.C. § 362(a), the filing of a petition in bankruptcy "operates as a stay, applicable to all entities" for eight specific scenarios (listed in the statute as (1) through (8)

---

[1] Mr. George Lyle did not appear or testify at the hearing. He did not supply an affidavit either. When asked about her husband's reaction to receiving the letters, Mrs. Lyle testified, "He feels like just throw them in the trash don't worry about them. And I feel differently about them."

4

respectively), some of which apply to the bankruptcy estate only, some to the bankruptcy debtor(s) only, and some to both. *See In re Gunter*, 410 B.R. 178, 181 (Bankr. E.D.N.C. 2008). Of particular interest here are subsections (3) and (6), which provide:

> (3) any act to obtain possession of property of the estate or of property from the **estate** or to exercise control over property of the **estate**;
>
> (6) any act to collect, assess, or recover a claim against the **debtor** that arose before the commencement of the case under this title….

11 U.S.C. § 362(a)(3) and (6) (emphasis added).

The postpetiton sending of an invoice to collect a prepetition debt is a violation of the automatic stay. *In re Robinson*, No. 06-10618-SSM, 2008 WL 4526183, at *3 (Bankr. E.D. Va. Sept. 29, 2008) (holding there was "no question" the creditor repeatedly violated the automatic stay by intentionally sending the debtor invoices that included charges for prepetition services). "[N]umerous courts have found that sending bills for prepetition debts, even without threats to sue, is a violation of the automatic stay." *Id.* (*citing In re Wills,* 226 B.R. 369, 378 (Bankr. E.D. Va. 1998); *In re Dayley,* 349 B.R. 825 (Bankr. D. Idaho 2006); *In re Draper,* 237 B.R. 502 (Bankr. M.D. Fla. 1999); *In re Meis–Nachtrab,* 190 B.R. 302 (Bankr. N.D. Ohio 1995)).

"[A]n *individual* injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1) (emphasis added). "The automatic stay serves a crucial function in any bankruptcy case and willful violations under § 362(h) are serious matters warranting the mandatory imposition of sanctions that Congress has proscribed." *In re Brock Utilities & Grading, Inc.*, 185 B.R. 719, 720 (Bankr. E.D.N.C. 1995).

Automatic stay violations also subject a creditor to civil contempt. "[A]utomatic stay provisions are treated as specific and definite orders of the Court" and "a wilful violation of the

5

automatic stay is contemptuous." *In re Miller*, 22 B.R. 479, 481 (Bankr. D. Md. 1982) (citations omitted). "The Supreme Court has clarified the parameters by which courts may impose contempt sanctions for violations of its orders." *In re Carnegie*, 621 B.R. 392, 409 (Bankr. M.D.N.C. 2020) (citing *Taggart v. Lorenzen*, 587 U.S. 554, 139 S. Ct. 1795 (2019)). Because civil contempt is a "severe remedy," a bankruptcy court should not resort to civil contempt sanctions where there is a "fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart*, 587 U.S. at 561, 139 S. Ct. at 1801 (*quoting California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 5 S.Ct. 618, 622 (1885)).

An individual seeking to recover damages for violation of the automatic stay must establish three elements: 1) a violation of the stay occurred; 2) the violation was willful; and 3) the violation caused actual damages. 11 U.S.C. § 362(k). For an act to be willful, the creditor "need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." *In re Ennis*, No. 14-02188-5-SWH, 2015 WL 6555392, at *5 (Bankr. E.D.N.C. Oct. 28, 2015) *quoting In re Strumpf*, 37 F.3d 155, 159 (4th Cir. 1994) (finding willful violation despite showing that the attempts were made in a genuine good faith belief of creditor that it had succeeded in stopping sending notices postpetition).

Once a creditor or other actor learns—or is put on notice of—debtor's bankruptcy filing, any actions intentionally taken thereafter in violation of the automatic stay are in nature, "willful" stay violations. 11 U.S.C.A. § 362(k); *In re Bourke*, 543 B.R. 657, 663 (Bankr. D. Mont. 2015). "Notice of the bankruptcy filing need not be formal or official to put a creditor on notice." *In re Johnson*, 501 F.3d 1163, 1172 (10th Cir. 2007). The communication must provide sufficient detail to put the creditor on notice of the stay violation with details like "the style of the bankruptcy case including the name of the Court, the name of the debtor, date of filing, case number as well as a

6

description or copies of the process which is in violation of the automatic stay." *In re Briskey*, 258 B.R. 473, 479 (Bankr. M.D. Ala. 2001)*; see also In re Haan*, 93 B.R. 439, 441 (Bankr. W.D.N.C. 1988) ("This court has found willful violations in circumstances where the offending creditor did not have actual notice of the bankruptcy.").

### A. Willful Violation

It is indisputable that a violation of the automatic stay occurred here as to the estate and at least to Mr. Lyle as a debtor due to Corey Inc.'s failure to heed the warnings in the case notices and law firm warning letters. Corey Inc. is accordingly charged with constructive, if not actual, knowledge of the Debtors' bankruptcy filing and the applicability of the automatic stay as to the bankruptcy estate. The ten invoices placed into evidence at the hearing demand money from the bankruptcy estate in general and the debtor Mr. Lyle (but not Mrs. Lyle) in particular.

Because Corey Inc. committed the intentional act of mailing the invoices with the imputed knowledge of the stay, the violation is deemed willful. *See In re Ennis* 2015 WL 6555392, at *6. As a result, the court will consider what damages are appropriate, retaining its discretion to eliminate "unnecessary or plainly excessive" claims and fees. *See In re Defeo*, 635 B.R. 253, 269 (Bankr. D.S.C. 2022).

### B. Damages

#### 1. Actual Damages

Having found a willful violation of stay, the court turns to the issue of damages. Mrs. Lyle seek damages in the form of reimbursement of medical bills tied to physical and emotional distress, recovery of attorney fees, and imposition of punitive damages. With respect to the first category of damages, she asserts that her medical bills increased at least $1004.80, comprised of $604.80 in prescriptions and $400 for doctor visits.

Mrs. Lyle, however, was not a target of the attempted debt collection. Her name is not on any of the invoices placed into evidence at the hearing, and no harassing phone calls or other collection efforts were made by Corey Inc. The filing of a joint petition in bankruptcy by husband and wife creates two individual bankruptcy estates that for ease of convenience, where joint debts are asserted, may be administered together. *See In re Chandler*, 148 B.R. 13, 15 (Bankr. E.D.N.C. 1992); 11 U.S.C. § 302(a); and F.R. Bankr. Proc. 1015. Nonetheless, Section 302, in allowing a married couple to file a joint petition, acts procedurally only, being "designed for ease of administration and to permit the payment of one filing fee." *In re Ward*, 652 B.R. 250, 261 (Bankr. D.S.C. 2023) (citing *In re Estrada*, 224 B.R. 132, 135 (Bankr. S.D. Cal. 1998)); *see also Thomas v. Peyton*, 274 B.R. 450, 456 (E.D. Va. 2001), *aff'd sub nom. In re Bunker*, 312 F.3d 145 (4th Cir. 2002) (holding "separate estates are administratively consolidated for convenience and efficiency but remain legally distinct for purposes of satisfying creditors' claims").

Thus, although the automatic stay was violated as to the bankruptcy estate of George Lyle through the mailings to him, Mr. Lyle did not appear or testify in the prosecution of this contested motion. No demand or creditor action was made or targeted to Mrs. Lyle. In short, the invoices alone do not violate section 362(a)(6) or other subsections of section 362(a) as to Mrs. Lyle alone in her capacity as a debtor, and Mr. Lyle did not assert a debtor claim.

Even if Mrs. Lyle had been included by name in the Corey Inc. invoices, she did not show at the hearing how under section 362 she can pursue personal injury style damages such as requested medical bills from emotional distress. Medical evidence sufficient to show direct causal connection or nexus between her already-existing emotional distress and new or increased anxiety directly resulting from receiving the invoices was not presented; only Mrs. Lyle's layman testimony was offered. Her testimony did not convincingly tie specific increased medical costs

and damages to receipt of the invoices. In a bankruptcy case, direct personal injury recovery for a postpetition personal injury claim must be carefully scrutinized under the narrow jurisdictional hold of the bankruptcy court over such new claims and the expanded due process grounds of a defendant creditor. *See In re Johnson*, 657 B.R. 836 (Bankr. E.D.V.A. 2024) (*citing In re Byrnes*, 638 B.R. 821 (Bankr. D.N.M. 2022)).[2]

While Mrs. Lyle may truthfully perceive these mailings were an attempt to collect from her, and the court does not downplay the reality of her serious medical issues or question the credibility of her testimony, the limited evidence from the hearing and the remainder of the case record does not support a finding of damages directly resulting from the invoices, which did not attempt to collect directly from Mrs. Lyle individually. Beyond the invoices, Corey Inc. employed no other method of collection, such as phone calls, threats from a collection agency, a demand letter, or the threat, or filing, of litigation. Her name does not appear on any of the invoices presented into evidence at the hearing, and there is no evidence in the record to show that Corey Inc. was attempting to collect a joint debt that included Mrs. Lyle. She has not shown that any stay violation caused direct and actual damages to her as a debtor individually.

Although the Motion was filed by the Debtors jointly, according to Mrs. Lyle's testimony, Mr. Lyle was not troubled or bothered by the invoices, and he did not wish to pursue the matter. He did not appear at the hearing to testify, nor did he submit an affidavit to assert a claim for recovery of damages. He has made no effort to pursue this matter and shown no injury sufficient to support a finding of damages resulting from a violation of section 362(a)(6) as a debtor.

---

[2] As discussed by the *Johnson* court, to establish a recoverable injury, "trauma or bodily injury or psychiatric impairment beyond mere shame or humiliation is required." *Id.* at 837. It may very well be that an adversary proceeding is required.

The invoices do, however, make a demand on the bankruptcy estate of Mr. Lyle in violation of the plain language of section 362(a)(3). With no other evidence of collection activity beyond the one-page invoices that were ignored and "thrown in the trash" by Mr. Lyle, at best only a nominal claim applies. *See In re Defeo*, 635 B.R. at 268 (awarding mileage costs debtor incurred in traveling to his attorney's office as actual damages but declining to award further expenses because of debtor's failure to mitigate damages).

Having found a technical violation of the automatic stay as it pertains to the bankruptcy estate (but not Mrs. Lyle's individual case), the court will grant $25 in nominal damages for each of the ten invoices placed into evidence (a total of $250.00) plus recovery of $75.00 in travel costs for mileage from the Debtors' home to the courthouse and parking.

### 2. Attorney Fees

Debtors request $4,315.00 ($350 for 27.5 hours) in attorney fees incurred as a result of the violation. (See Dkt. 49, Updated Attorney Fee Application.) Pursuant to 11 U.S.C. § 362(k), upon proving a willful violation, the estate is entitled to recover "reasonable and necessary" attorney fees incurred as a result of a willful violation of the automatic stay. *In re Defeo*, 635 B.R. at 268. In the context of § 105(a), "Almost every case this court has reviewed that found a willful violation of the discharge injunction has awarded attorney's fees." *In re Ennis,* 2015 WL 6555392, at *6 (quoting *In re Baxter*, No. 13-27709-DER, 2015 WL 6122158, at *8 (Bankr. D. Md. Oct. 15, 2015)).

In determining what constitutes reasonable fees, the court has looked at factors such as "the novelty and difficulty of the questions raised, the customary fee for like work, the amount in controversy and the results obtained, and attorney's fees awards in similar cases." *In re Warren*, 532 B.R. 655, 665 (Bankr. D.S.C. 2015). The Debtors' case is factually similar to *In re Defeo*,

where the court found, "The customary attorney's fee for similar cases with similar facts appears to range between $250 and $2,500." *In re Defeo*, 635 B.R. at 265 (finding willful violation of the stay where defendant received the order confirming the Chapter 13 plan and where the settings did not save to no longer send bills due to inadvertent computer error).

Having denied personal injury and medical costs recovery to Mrs. Lyle based on the lack of proof of causation and because she was not the target of the invoices, this case does not present novel or difficult questions rising to the level of intentional acts, egregious behavior, and instances of bad faith by the creditor warranting the level of attorney fees found in such circumstances. *See e.g., In re Franklin*, 614 B.R. 534, 542 (Bankr. M.D.N.C. 2020) (finding egregious conduct when creditor sold a car with a 29% APR loan to debtor, installed a "disabling device" allowing it to disable the Vehicle remotely and prevent it from starting, and repeatedly lied about having received a $790 down payment from debtor). The *Franklin* court awarded $3,754 in attorneys' fees and $59.90 in costs, finding, "[T]he total hours spent, total amount billed, and rates are consistent with the practice in this district, the issues involved in this case, and counsel's experience" *Id.* at 549.

Here, however, the mere sending of the bills, while technically violating the stay as to the estate and Mr. Lyle, is not creditor behavior reaching the reprehensible level of that in the *Franklin* case and similar matters. The present matter is more similar to the facts found in *Defeo*. Also, the majority of the time spent in the matter—judging from the description of services —including nearly all of the time at the hearing is tied to dealing with her disallowed damages claim. Consequently, reasonable attorney fees in this matter are limited to $1,250.00.

**3. Punitive Damages**

Debtors request $2,000 in punitive damages, ostensibly calculated at $100.00 per invoice for nearly two years of invoices.[3] Punitive damages require "more than [a] mere willful violation of the automatic stay." *See In re Banks,* 577 B.R. 659, 669 (Bankr. E.D. Va. 2017) (internal citation omitted). Punitive damages are awarded where the circumstances of the violation rise to a necessary level of "egregious, vindictive or intentional misconduct." *In re Clayton*, 235 B.R. 801, 811 (Bankr. M.D.N.C. 1998). Punitive damages are appropriate where the creditor's actions "demonstrate a disdain for the financially vulnerable customers it purports to serve and an utter disregard for the automatic stay." *In re Franklin,* 614 B.R. at 542 (finding the dealership refusal to release a kill switch and then repossessing a vehicle while debtor was in the hospital to warrant an award of $15,000 in punitive damages, despite actual damages being low); *see also In re Johnson*, No. 15-50053, 2016 WL 659020 (Bankr. W.D.N.C. Feb. 17, 2016) (awarding punitive damages of $100 per phone call for 540 phone calls made to debtors over a six-month period in violation of the automatic stay, for a total award of $54,000).

Here, Mrs. Lyle testified that Debtors received a total of twenty invoices, although only ten were introduced into evidence. There was no testimony or other evidence of alternative collection attempt methods such as phone calls, threats from a collection agency, or litigation, which might give rise to the level of disgraceful activity required to support and award punitive damages. *See, e.g., In re Defeo*, 635 B.R. at 267 (declining to award punitive damages where a single invoice contained the following message, "Your account is in default and could be sent to a collection agency. Please call.") Instead, similar to the facts in *Green Tree Servicing*, "indifference

---

[3] Important to note that even if Mrs. Lyle personally had standing under the statute to claim punitive damages on this matter, she would still not be able to prove what is necessary for punitive damages, as the evidence she has presented simply does not show Corey Inc.'s actions as egregious enough to satisfy the high bar required in awarding punitive damages.

12

and poor communication" on the part of Corey Inc., seem to be more responsible for the outcome than "reckless disregard, arrogant defiance, bad faith, or malicious, egregious, or vindictive conduct usually required for awarding punitive damages." *Green Tree Servicing, LLC v. Taylor*, 369 B.R. 282, 290 (S.D. W.Va. 2007).

As noted above, the three letters placed into evidence at the hearing are not models of clarity with respect to the subject invoices. They do not adequately describe the offending invoices, circumstances of the Debtors, or the applicability and consequences of the stay violations. The three documents appear to be mere form letters. Due process considerations for the creditor, where egregious conduct is not present, demands more warning, even under circumstances of a clear stay violation. The letters do not support a warning sufficient to support a finding of callous disregard for the stay on the part of Corey Inc. in support of imposition of punitive damages. Whether a continued violation of the automatic stay if Corey Inc. continues to send invoices in violation of the stay after the issuance of this order would result in an award of sanctions or further damages, including punitive damages, is not a question properly before the court today.

## CONCLUSION

BASED ON THE FOREGOING, IT IS ORDERED, ADJUDGED, AND DECREED:

1. The Motion be granted in part and denied in part, in that:

    a. As to the bankruptcy estate, the Motion is allowed in part, and the bankruptcy estate is awarded direct damages in the amount of $325.00 for the creditor continuing to send postpetition invoices in contravention of the case notices;

    b. The additional claims of Mrs. Lyle as a debtor for personal injury and emotional distress are denied;

    c. Recovery of attorney fees in the amount of $1,250.00 is granted; and

    d. The request for imposition and recovery of punitive damages is denied.

2. Corey Inc. is accordingly assessed damages for violation of the automatic stay of 11 U.S.C. § 362 as itemized above in the aggregate sum of $1,575.00.

3. Within two (2) business days of the entry of this Order, counsel for Debtor is directed to serve a copy of this Order by certified United States mail, return receipt requested, to Corey Inc. at its known mailing addresses.

4. Within fourteen (14) days of the date this Order becomes final, Corey Inc. is DIRECTED and REQUIRED to pay the stated sum, in good funds, to the order of counsel for the Debtors. Upon receipt and clearing, counsel for Debtors is directed to forward to the Debtors the $325.00 awarded to their chapter 13 bankruptcy estate.

5. The court retains full and continuing jurisdiction over this matter including possible enforcement under pain of contempt in the event of noncompliance by Corey Inc.

**END OF DOCUMENT**